Jewel David **TOWNSEND**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 41126.

Court of Criminal Appeals of Texas.

April 24, 1968.

2. See Article 38.22, Sec. 2, V.A.C.C.P., effective August 28, 1967.

See Ex Parte Hodges, 166 Tex.Cr.R. 433, 314 S.W.2d 581, and cases therein cited.

In the case at bar, appellant's court appointed counsel, prior to trial, presented to the court a written motion requesting such hearing. Said motion was supported by the affidavit of Dr. Marvin Grice [1] that he had examined the appellant two days earlier and was of the opinion that appellant was "presently insane."

Upon the District Attorney's refusal to consent to such proceeding, the trial court, in accordance with Article 46.02, Sec. 1, Vernon's Ann.C.C.P., 1965,[2] overruled the motion, to which action appellant duly excepted.

Thereafter, appellant filed no motion for mistrial, as required by Article 46.02, Sec. 2, V.A.C.C.P., 1965, in effect at time of appellant's trial, and made no further effort to raise the issue of present competency or the issue of insanity as a defense or to have either issue presented to the trial jury.

In support of his first ground of error appellant relies upon the provisions of Article 34, V.A.P.C. and the decision of the United States Supreme Court in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815.

In Pate the Supreme Court made clear "that the conviction of an accused person while he is legally incompetent violates due process, * * * and that state procedures must be adequate to protect this right."

The Court in Pate did not reveal the extent of inquiry to satisfy due process requirements, but it would appear at the minimum that a separate hearing for determination of competency is obligatory though not necessarily a preliminary one. While Pate would not require a jury trial on

Dan Sullivan, Robert E. Barber, Andrews, for appellant.

Don M. Nugent, Dist. Atty., Kermit, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is Burglary with Intent to Commit Theft; the punishment, enhanced under the provisions of Article 63, Vernon's Ann.P.C., life.

We are squarely confronted at the outset with the most serious question in the case. Did the trial judge err in refusing appellant's timely presented demand, supported by affidavit, for a preliminary hearing upon the sole issue of his competency to stand trial (present insanity)?

Prior to the effective date of the 1965 Code of Criminal Procedure such refusal would have constituted reversible error.

1. We learn from the State's brief and from oral arguments before this Court that Dr. Grice, a psychiatrist, was appointed by the trial court at county expense to examine appellant upon the request of his court appointed counsel.

2. Article 46.02, Sec. 1, supra, reads: "No issue of insanity shall be tried in advance of trial on the merits, except upon written application on behalf of the accused with the consent of the State's attorney and the approval of the trial judge."

such issue, it would appear that Texas law would.[3]

Article 34, V.A.P.C. provides:

"No act done in a state of insanity can be punished as an offense. *No person who becomes insane after he committed an offense shall be tried for the same while in such condition.* No person who becomes insane after he is found guilty shall be punished while in such condition." (emphasis supplied)

"The rule against trying an incompetent person is long established and can be traced from the earliest common law times to the presently prevailing view in this country. * * * Probably "the chief rationale on which the competency doctrine has been founded is the notion of a 'fair trial.'" 18 Baylor L.Rev. 22, 28. See also Sanders v. Allen, 69 App.D.C. 307, 100 F.2d 717; United States v. Chisolm, 149 F. 284 (S.D. Ala. 1906); Youtsey v. United States, 97 F. 937 (6th Cir., 1899); 45 Tex.L.R. 565; 81 Harv.L.Rev. 454. The protection afforded by the rule has been considered vital and basic enough to receive Constitutional protection under the due process of the law re-

quirement. See Pate v. Robinson, supra; 18 Baylor L.R. 22.

This rule was long ago made a part of the Texas Penal Code, and when a forerunner of present Article 34, supra, (Art. 41, Pas. Dig., p. 399, art. 1643, 4th ed., 1873) was interpreted in 1874, the Supreme Court of Texas, which then had criminal jurisdiction, held that the statute, making "insanity" a bar to prosecution, afforded a defendant upon timely demand a right to a trial on the issue of present insanity before trial of the criminal charge for the purpose of determining whether he was mentally competent to make a rational defense to the criminal charge, regardless of the absence of any statutory provisions for the same. Guagando v. State, 41 Tex. 626. Guagando made clear also that the failure to grant a preliminary hearing upon proper request therefor is not cured by trying the issue of present insanity after trial and conviction. See also Holland v. State, 52 Tex.Cr.R. 160, 105 S.W. 812; Witty v. State, 69 Tex.Cr.R. 125, 153 S.W. 1146.

This holding has been described as a "(j)udicial invention of a procedural device for assertion of the right not to be

3. Article I, Sec. 15, Tex.Const., Vernon's Ann.St.; See Ex parte Hodges, supra; Martinez v. State, 169 Tex.Cr.R. 229, 333 S.W.2d 370; McGee v. State, 155 Tex.Cr.R. 639, 238 S.W.2d 707. Former Articles 932a and 932b, V.A.C.C.P., since repealed, assumed the necessity of a jury trial at a preliminary hearing on the issue of present insanity. Observe further that jury trials on the issue of present insanity are required during and after trial when issue is raised. Article 46.02, V.A.C.C.P. Note particularly Sec. 5(g) (1), (2), (3) of said Article as amended in 1967. See also Footnote 7 herein.

While it appears to this writer that headnote #2 of Guagando v. State, 41 Tex. 626 (1874) with regard to the necessity of an affidavit to raise the issue and the requirement of a jury at a preliminary trial on the issue of mental competency to stand trial are not supported by the opinion itself. Guagando has been frequently cited for such propositions. In the absence of statutory procedure for such preliminary trial the pro-

cedure used appears to have been generally patterned after the statutory procedure for insanity following conviction which did require a jury. At any rate the use of a jury impaneled solely for the purpose of the preliminary hearing seems to have been well established by the time of the adoption of the 1876 Texas Constitution and certainly by the time of the 1935 amendment to Art. I, Sec. 15, Tex.Const. See, therefore, White v. White, 108 Tex. 570, 196 S.W. 508; L. R.A.1918A, 339; 1 Baylor L.Rev. 248, 286. At common law it appears that an accused was not entitled to a jury as a matter of right on the issue of insanity as a bar to prosecution. The judge could, in his discretion, determine the issue himself, upon his own inspection and testimony offered, or call a jury for such purpose, or direct that the question be tried by the jury at the trial. See United States v. Fore (D.C.Cal.), 38 F. Supp. 140; Youtsey v. United States (6th Cir.), 97 F. 937.

tried while insane [which] was essential to preservation of the right." State v. Olsen, Tex., 360 S.W.2d 398.

In discussing the Guagando decision, Presiding Judge Woodley, in his article on "Insanity As A Bar to Criminal Prosecution," 3 South Texas Law Journal 204, said:

"This holding has been consistently followed, (Amos v. State [155 Tex.Cr.R. 488], 237 S.W.2d 305; Chapman v. State [136 Tex.Cr.R. 285], 124 S.W.2d 112; Pickett v. State [113 Tex.Cr.R. 395], 22 S.W.2d 136; Ray v. State [110 Tex.Cr.R. 31], 7 S.W.2d 93; Ramirez v. State [92 Tex.Cr.R. 38], 241 S.W. 1020; Witty v. State [69 Tex.Cr.R. 125], 153 S.W. 1146) and it has been held that the provisions of Article 34 are mandatory and are binding upon the courts and prosecuting officers. (Lindsey v. State [97 Tex.Cr. R. 300], 260 S.W. 862).

"It has been held, however, that where the issue is raised after the main trial begins, the present insanity of the defendant may, upon request, be submitted with instruction to the jury that if they find the defendant presently insane they will so state in their verdict and consider no other issue. (Chapman v. State [136 Tex.Cr.R. 285], 124 S.W.2d 112, rehearing denied [136 Tex.Cr.R. 285], 124 S.W.2d 996; Wilson v. State [58 Tex. Cr.R. 596], 127 S.W. 548) But the court declined to approve submission of the issue of present insanity at the main trial as a substitute for a preliminary trial, observing that much confusion would arise if both insanity as a defense and present insanity were submitted at the same trial (Ramirez v. State, 241 S.W. 1020)."

The rule of Guagando did not, however, entitle an accused to a preliminary trial on the issue of insanity as a defense (insanity at the time of the commission of the offense).

■ Prior to 1937 there was no provision in the Code of Criminal Procedure for a trial of the defensive issue of insanity in a separate preliminary trial and no need for such hearing to protect the right given by the first sentence of Article 34. It was clearly recognized that insanity at the time the offense was alleged to have been committed was a defense to the criminal charge and was to be tried like other defenses at the main trial under a plea of not guilty. Ramirez v. State, 92 Tex.Cr.R. 38, 241 S.W. 1020; McGee v. State, 155 Tex.Cr.R. 639, 238 S.W.2d 707.

The distinction between the two issues of present insanity or incompetency to stand trial and insanity as defense or criminal responsibility, "and the rationale for according them different procedural treatment was recognized in Ramirez v. State, 92 Tex.Cr.R. 38, 241 S.W. 1020. * * *" State v. Olsen, supra.

In 1937 and again in 1957, the Legislature, while recognizing the judicially invented preliminary trial on the issue of competency to stand trial, made some interesting changes which are best described in the Texas Supreme Court's opinion in State v. Olsen, supra, as follows:

"In 1937 the Legislature enacted Article 932a, Vernon's Code of Criminal Procedure. See Acts 1937, 45th Leg., p. 1172, ch. 466. As noted above, there was at that time no legal procedure, statutory or decisional, by which a trial court could try the issue of insanity at the time of the act in advance of a trial on the main charge, and no procedure by which a court could try the issue of present insanity, over the objection of the defendant, on the trial of the main charge. By enactment of Article 932a the Legislature supplied a procedure to remedy both deficiencies. Whether it was wise in so doing is not for us to speculate. In Section 1 provision was made for the submission of issues and form of verdicts in any case when the issue of insanity was tried 'before the main charge,' and in Section 2 provision was made for the submission of issues and form of verdicts when the issue of insanity was tried on

'the trial of the main charge.' Issues and verdicts on insanity at the time of commission of the alleged offense and at the time of trial were required in both instances. But in that statute, as in Article 932b which repealed and displaced Article 932a, the Legislature did not purport to state when or under what circumstances a preliminary trial was to be had, or how jurisdiction to order it was invoked. We must assume that both Article 932a and Article 932b were enacted by the Legislature with full knowledge that under court decisions jurisdiction of a trial court to grant a preliminary trial on the issue of insanity could be invoked by or on behalf of a defendant only by a motion or request therefor based upon allegations that because of present insanity the defendant was unable to prepare a rational defense to the main charge."

The Olsen decision made clear that the jurisdiction of a court to try issues of insanity before the trial of the main charge can be invoked by or on behalf of the defendant only by motion or request for trial on the issue of present insanity and not on the issue of insanity as a defense alone. In other words, insanity at the time of the commission of the act could be submitted as a second issue at a preliminary trial, but could not be the sole issue at such hearing.

In discussing the 1957 enactment of Article 932b, V.A.C.C.P., Judge Woodley in his South Texas Law Journal treatise, supra, said:

"The new act [Article 932b] makes such a finding [insanity at the time of the act] at the preliminary trial more than a defense. It is an acquittal, the same as if made by the jury at the main trial. So it

is now possible for one charged with a criminal offense to be acquitted, though he has never been tried for such offense, and in fact to be acquitted by a jury that has not heard the indictment read, the facts relating to the act charged, or any evidence other than that relating to the question of the sanity or insanity of the accused."

There can be no question that the availability of the question of insanity at the time of the alleged act as a possible second issue at the separate preliminary trial under such circumstances greatly increased the number of requests for such hearings, frequently resulting in unavoidable delays of the trial on the merits.[4]

Further, a study of the legislative history of the 1965 revision of the Code of Criminal Procedure, including the recommendations of the State Bar Committee on such revision, clearly indicates that the changes wrought as a result of the enactments of Article 932a and subsequently Article 932b, had caused confusion and apparent public dissatisfaction with the resulting multiple sanity trials before, during and after trial, all with different juries.

The concern indicated undoubtedly resulted in the enactment of Section 1 of Article 46.02, supra, which provided that no issue of insanity could be tried prior to the trial on the merits except when the accused's written application therefor had the consent of the prosecutor and approval of the trial judge.

In Section 2 of Article 46.02, supra, of the said 1965 revision, which was in effect at the time of appellant's trial, a rather unique procedure was established for raising the issue of present insanity at the trial on the merits. Evidence as to the issue

---

4. In the absence of an unvacated adjudication of insanity the burden of proof (by a preponderance of the evidence) would be on the defendant as to both issues of insanity thus rendering it desirable for him to seek to sustain his burden as to insanity as a defense, but not to offer proof to overcome the pre-

sumption as to his present sanity. Under a finding by the jury that he was insane at the time of the act he would be acquitted, and if the jury further found that he was presently sane he would be a free man, not to be confined in the Texas Department of Corrections or a state hospital.

of present insanity could be heard only if prior thereto the defendant had filed a written motion for a mistrial. Other portions of said Section 2 dealt with the submission of insanity as a defense at the main trial.

Did the Legislature intend by such action to repeal the ancient rule announced in the second sentence of Article 34, supra? Did it intend to restrict the rule from coming into play before the trial on the merits unless with the going consent of the prosecutor and the court? Did it intend, without acquisition of such consent, to relegate the accused to seek resolution of his claim of incompetency to make a rational defense to the trial on the merits alone? In other words, must an accused who contends he is incompetent to stand trial but who is unable to obtain the joint consent of the court and the prosecutor, and who has made a proper and timely demand for a preliminary hearing on that issue, be required to actually go to trial, plead to the indictment, present such defenses as he is capable of doing so, all before he can obtain a finding as to his competence to stand trial?

If the phrase "No issue of insanity" as used in Section 1 of Article 46.02, supra, could be interpreted as meaning only insanity as a defense (criminal responsibility), then no great problem is presented. Under such construction the accused would still have available to him the judicially invented procedure for determining his competency prior to trial upon his timely demand or request.[5]

Such, perhaps, is much too simple a solution. It is clear from a reading of the statutes and the decisional law that we in Texas, like many other jurisdictions, have used the term "insanity" to include both criminal responsibility and competency to stand trial.

If the "No issue of insanity" is given the broader meaning as appears more logical,

then there is at least at first blush a seeming conflict between the second sentence of Article 34, supra, and Article 46.02, supra. In enacting said Article 46.02 in 1965, we do not think the Legislature intended to replace the ancient rule that no man should be tried while "insane." At least in cases where the necessary consent has been obtained, the rule and the judicially invented procedure for a preliminary trial for the preservation of that right is still recognized. Further, Article 34, supra, and its inherent procedure, is seemingly saved from repeal by virtue of Article 54.02, Sec. 2(a) which provides that any portion of the Penal Code which contains special or specific provisions of criminal procedure covering specific instances is not repealed by the Code. We would find it difficult to attribute to the Legislature an intention to permit one procedure if the accused claiming incompetency to stand trial is fortunate enough to obtain the prescribed consent, and another completely different procedure if such consent is not given. Under such construction of the statutes the accused claiming incompetency, but who has been unsuccessful in obtaining the necessary consent, would be forced to a trial on the merits and have to plead to the indictment and prepare and present his defenses as best he can before he could get a determination of his competency to stand trial. See Article 46.02, Sec. 2, in effect at time of appellant's trial. If the only procedure available to an accused is to have the issue of competency to stand trial (present insanity) submitted to the jury along with the conditional submission of guilt or innocence, might not the jury reach an unanalytical and impressionistic verdict as to competency based on all they had heard? Cf. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. Note that this procedure was denounced in Ramirez v. State, supra. See also Rice v. State, 135 Tex. Cr.R. 390, 120 S.W.2d 588. If such inter-

5. We do not here decide the question of whether, if a preliminary trial is had, insanity as a defense may be submitted as a second issue. The express statu-

tory authorization for such procedure, Articles 932a and 932b, has been repealed. The authority therefor would have to be found elsewhere.

pretation be given to the provisions of the 1965 Code of Criminal Procedure, then we would be required to determine if such procedure is adequate to meet due process requirements, protecting the right of an accused not to be convicted while legally incompetent. See Pate v. Robinson, supra. Further, we would be met with questions of equal protection of the law.

■ While Pate v. Robinson, supra, had not been decided when Article 46.02, supra, was originally enacted, we must assume the Legislature acted with full knowledge of the other court decisions mentioned.

■ In determining the right of an accused to a preliminary hearing on the issue of competency to stand trial when properly demanded, we consider that Article 34, supra, and Section 1 of Article 46.02, supra, as being in pari materia and must be construed together in arriving at the legislative intent and conflicts therein are to be harmonized where reasonably possible. See 53 Tex.Juris. 2d Ed., Statutes, Secs. 186–188, pp. 280–288.

■ Further, we must keep in mind the rules of statutory construction that penal statutes are to be construed strictly in favor of the accused, and that when two interpretations are possible, one constitutional and the other not, then the constitutional interpretation must prevail.

Article 46.02, like its predecessors, Articles 932a and 932b, does not purport to change or modify Article 34 of the Penal Code, its purpose being to provide a statutory procedure that would apply in any case where the issue of insanity was raised before, during or after his trial for a criminal offense. The procedural statutes also sought to make provision for the commitment or release of an accused found to be presently insane regardless of when he became insane.

■ A prime purpose of Article 46.02, V.A.C.C.P., 1965, was to correct the procedure under which an accused could secure

a hearing before three or more different juries on the issue of present insanity.

The obvious design of Section 1 of Article 46.02, supra, was that the jury impaneled to try the case on the merits and not a jury impaneled solely to try the issue of present insanity would try such issue when properly presented or raised and the trial on the merits should not proceed unless the jury found that the accused was sane and competent to stand trial.

Wisely, the Legislature recognized that there would be cases where there would be no contest as to the accused's competency to stand trial, or where it would be highly desirable and practical to dispose of the issue in a separate preliminary hearing as had long been the custom—hence the provisions of Section 1 of Article 46.02.

Since recognizing the judicial invented procedural device for preservation of the substantive right contained in the second sentence in Article 34, V.A.P.C., the Legislature has never attempted to supplant such procedure with an all encompassing and exclusive statutory procedure. We do not deem Article 46.02 as an exception.

■ In view of the foregoing, we hold that where an accused makes a timely motion or request for a preliminary hearing on his competency to stand trial, based upon allegations that because of present insanity he is unable to make a rational defense to the main charge, he is entitled to such hearing if it be with the required consent and approval. If such consent and approval are not given, he is not entitled to such preliminary hearing before a jury. However, he is still entitled not to be tried while incompetent to make a rational defense, regardless of the consent of the prosecutor or approval of the trial court. Otherwise, the very purpose of Article 34, (2nd sentence) supra, would be subverted. Therefore, as in the case at bar, where a timely demand or request for a preliminary hearing supported by affidavit is denied for want of consent, the trial judge is nevertheless under the duty, after the selection of

the jury on the trial on the merits and preferably prior to the reading of the indictment, to forthwith afford the accused a hearing on his competency to stand trial. Under such procedure the same jury, if the defendant is found presently sane, may well pass on competency and subsequently on guilt or innocence (and even punishment), but the jury would be given the opportunity to pass on competency to stand trial uncluttered by evidence of the offense itself.

We further hold that the failure of the appellant to pursue the issue of present competency at the trial on the merits even though available to him under the conditions prescribed in Article 46.02, Sec. 2, supra, does not constitute a "waiver" where a proper and timely demand for a preliminary hearing has been made and refused.[6]

Our holding may be characterized as affording an accused when his request for a preliminary hearing on present insanity has been properly presented and refused for want of consent or approval, a procedure for the preservation of his rights under the second sentence of Article 34, supra, which will satisfy due process requirements as well.

Care should be taken to observe that we are not here dealing with a case where no request or demand is made for a preliminary hearing, but the evidence as to the accused's present incompetence becomes sufficiently manifest during a trial so that the due process clause of the United States Constitution as construed in Pate v. Robinson, supra, would require the trial judge to halt the trial, conduct a hearing on that issue on his own initiative and obtain a finding by the trial jury on the issue before proceeding further.[7] While Pate would not require a jury finding as noted above, Texas law would.

The manner in which the necessity for an inquiry concerning an accused's present insanity or competency is raised by the defense before or during trial is not of much importance.[8] If the trial judge learns from personal observations, or facts known to him, or from evidence presented, or by motion of the accused or his counsel, or by affidavit, or from any reasonable claim or credible source that there is a bona fide doubt as to the accused's condition to comprehend his situation or make his defense, a duty devolves upon the trial judge to cause a sanity hearing on that issue to be held as provided by law.

> "It is the trial court in whose mind a real doubt of sanity or mental capacity to properly defend must be created before that court is required to order an inquiry solely on its own initiative. The necessity for an inquiry under such circumstances addresses itself to the discretion of the court and its decision will not be disturbed in the absence of abuse of sound judicial discretion." Van Dusen v. State, 197 Kan. 718, 421 P.2d 197. See also People v. De Simone, 28 Ill.2d 72, 190 N.E.2d 831; People v. Burson, 11 Ill.2d 360, 143 N.E.2d 239.

We are of the opinion that the circumstances revealed by this record, including the unrefuted affidavit of Dr. Grice, were sufficient to raise a bona fide doubt as to the appellant's present sanity.

We, therefore, hold that while the trial judge did not err in refusing appellant's request for a preliminary or separate sanity

---

6. Note that in Pate v. Robinson, supra, the failure of the defendant to raise the competency issue prior to trial, under the fact situation there presented, did not constitute waiver.

7. Such procedure is similar to that now provided in Article 46.02, Sec. 5(g) (1), (2), (3), V.A.C.C.P., where the trial is before the court without a jury and there arises in the mind of the court from any cause a reasonable doubt as to the present sanity of the accused.

8. Wharton's Criminal Procedure, Vol. 5, Chapt. 80, Sec. 2021, p. 161; 23 C.J.S. Criminal Law § 940(3). As to this question Cf. Lermo v. State, Tex.Cr. App., 68 S.W. 684.

**64**

trial in view of Section 1, Article 46.02, supra, and the refusal of the District Attorney to give consent to such proceeding, he nevertheless erred in failing to accord the appellant the opportunity for such hearing after the selection of the jury on the trial on the merits and preferably prior to the reading of the indictment.

In view of our disposition of the cause, we do not deem a discussion of the other grounds of error necessary.

For the error observed, the judgment is reversed and cause remanded.